## BELL and WIFE v. HOGAN.

1. The words of a bill are to be construed literally, so as to carry into effect the intention of the testator, unless contrary to law.
2. T W by will, lends to his daughter E slaves during her life, and if she leaves heirs of her body, then gives them to such heirs for ever; and for want of such heirs, then to A. W and others. The remainder to A. W. is good, and is not too remote.
3. Detinue cannot be maintained unless the plaintiff has the entire interest in the chattel sued for.

JOHN J. BELL and ANNE S. BELL, his wife, brought an action of detinue in the Circuit Court of Franklin county, against Arthur S. Hogan, to recover twelve negroes claimed under a will, in which a trial was had at the spring term, 1827.

It appeared in evidence, that in 1798, Thomas B. Whitmell, the father of Anne S. the plaintiff's wife, by a clause in his will, bequeathed the negroes in question to his daughter Elizabeth West Whitmell, in the following words: "I lend to my daughter Elizabeth West Whitmell, six negroes, (naming them,) and their increase, during her natural life; and if my said daughter Elizabeth West Whitmell should leave an heir or heirs, lawfully begotten of her body, I then give to the said heir or heirs

so begotten, the said six negroes above named, and their increase, to them and their heirs forever. And for want of such heirs, my will and desire is, for the said above named six negroes and their increase, to be equally divided among my four children, Thomas Whitmell, Drew S. Whitmell, *Anne S. Whitmell*, and Thomas West Whitmell, to them and their heirs forever." The said Elizabeth, soon after the making of the will, intermarried with one Claudius David L. and afterwards the six negroes went into the possession of her and her husband. Thomas West Whitmell died under age and without issue, in the lifetime of Elizabeth. Thomas Whitmell and Drew S. Whitmell, in October, 1813, released to said Elizabeth, while she was the wife of C. David L. by deed, all their interest in the slaves, and also died without issue. Claudius David L. died, and left all his negro property to his wife Elizabeth, who afterwards intermarried with Hogan, the defendant, and in October, 1824, she died without issue, never having had any children.

On the above evidence, the Judge who presided, instructed the jury that the bequest to Elizabeth was a limitation over after an indefinite failure of issue, and therefore void; that the limitation over being void, the first legatee took an absolute estate; that if said Elizabeth was entitled only to a life estate, that then, at her death, the property in the slaves reverted back, and sunk into the residuum of the testator's estate undisposed of by his will; that Thomas and Drew S. Whitmell, two sons of the testator, had a vested interest in this residuum, which they might, and did, by their deed, convey to their sister Elizabeth, and that in either aspect of the case the plaintiffs could not recover. To this charge the plaintiffs excepted, and a verdict was found for the defendant.

The charge of the Court was, the error assigned by the plaintiffs below, who are also plaintiffs in this Court.

M'KINLEY and HOPKINS, for the plaintiffs in error.

ORMOND and KELLY, for the defendant.

## By CHIEF JUSTICE LIPSCOMB.

THE question for our consideration is clearly one of construction, depending on the intention of the testator. To ascertain what was his intention, we should not be bound down too strictly to the technical import of words;

JULY 1828.

Bell and Wife
v.
Hogan.

but should endeavor to explore the intention, by giving the plain ordinary meaning, such as would be attached to them in common parlance.   The objection is but too well founded, that it is the business of lawyers and jurists to distort the meaning of plain and common sense language, and give to it a construction foreign from the intention of the person who used it.   The evil is, perhaps, the result of an habitual veneration felt by the profession in common, for the early fathers of the law.   We are too apt to transfer much of our admiration for their talents and great learning, to the very language used by them, and labor to sustain terms after they have long lost all meaning at all, or acquired one very different from the original import.   But, whatever may have been its origin, it is not only a reproach to the profession; but it has been the cause of much injustice to parties, and the sooner these shackles, imposed by a fastidious regard to ancient technicalities, can be broken the better.   The liberal construction given to wills by the English and American Courts of late, has not only promoted substantial justice, but it has likewise elevated the character of the profession.   It is now the acknowledged rule of construction of wills, that it is not material what precise form of words it may be couched in, if the intention of the testator can be fathomed, it shall govern, unless that intention is contrary to law.

It is a rule of law, that a limitation over to another, after an indefinite failure of heirs, is bad, because it is too remote.   If the testator in the case under consideration meant, in his limitation over to the plaintiff and her brothers, that it should not take effect until there had been an indefinite failure of heirs, according to the technical import of the term heirs, we cannot carry his intention into effect; and the charge of the Court was correct, that it was too remote, and that Elizabeth, the first taker, took an absolute estate.   But if we are authorized, from the terms of the bequest, to believe that an indefinite failure of heirs was not meant, and that by "failure of heirs" he meant heirs of a particular kind, then his intention is not opposed by the rule of law, and should be carried into effect.   The testator *loans* to his daughter, for and during her natural life ; here it must be apparent, at the first outset, that he only intended to vest a life estate.   There is no giving to her and her heirs, but a loan to her ; for the

word *loan*, though perhaps in a devise not strictly appropriate, yet in common parlance would be very significant of the testator's intention. And if she should leave an heir or heirs of her body, lawfully begotten, the gift was to them and their heirs forever; and on failure of such heirs, then over. The failure of heirs must refer to the failure of her issue, and the word *leave* sufficiently limits the time when the devise is to take effect; that is, if at all, at the death of the first taker. The whole sentence taken together, can leave no doubt but the testator intended, that on the failure of issue living, at the death of Elizabeth, the limitation over should take effect. This view of the subject will acquire additional strength from the fact, that the limitation over was to persons who were heirs, and would come in on failure of issue: The testator, therefore, in devising over to them, could not have meant an indefinite failure of heirs. It would be absurd to give it that construction; it would involve as great an absurdity as to make him say, "on failure of heirs I give to my heirs;" and we can only avoid this paradox, by supposing that he meant, by heirs, those of a particular kind; that is to say, the issue of the body of Elizabeth, distinguished from collaterals. This limitation was not too remote, because it was to take effect, if at all, at the death of the first taker. A limitation over of an excentory devise is never too remote, if it is to be carried into effect within a life or lives then in being, and twenty-one years and a fraction of another year after.

We will now inquire what has been the current of authority in analogous cases. The first case that we will refer to, is that of Peak against Pegden, [a] "Thomas Biles, [a 2 D. & E. 721.] the testator by will, gave to his grandson, Thomas Biles Peak, son of Daniel and Sarah Peak, the premises in question, and the heirs lawful of him, forever; but in case he should happen to die, and leave no *lawful heir*, then and in that case he gave them, after the death of the said Thomas Biles Peak, to the next eldest son or heir of the said Daniel Peak and Sarah his wife, and so on to the next son or heir, if the last should die without heir." Thomas Biles Peak entered on the premises, and died without issue, and the defendant claims under him; the plaintiff claims under the will of the testator, Thomas Biles, being the next oldest son of Daniel and Sarah Peak, living at the time of the death of Thomas Biles

JULY 1828.

Bell and Wife
v.
Hogan.

Peak. Lord Kenyon said, that it was apparent on the' will, that the testator by "lawful heirs," meant heirs of the body, and leaving no issue at the time of his death; that this is conformable to all the rules of limitations. for a limitation over may take effect, if the contingency on which it depends is to happen within a life or lives in being, and twenty-one years afterwards. He said that some of the cases left it in doubt whether the particular words used, confined it to dying without issue at the time of the death of the person to whom the bequest is made; but when they are so confined, as we think they are in this case, it never was doubted that the limitation over was good. This opinion of Lord Kenyon shews, that although the devise to the first taker was to *him and his heirs forever*, yet that the words him and his heirs forever, were subjected to the restrictive words contained in the devise, and that the word heirs was ruled to mean issue of the body. It further authorizes us to believe, that when Mr Fearn lays down the rule, that a devise to A. and his heirs, vests the absolute fee in A. that he is to be understood to apply this rule where there are no restrictive words in the devise, to shew that such was not the intention of the devisor, but that he intended a life estate only.

*a* 3 D. & E. 143.

The next case is that of Porter against Bradly. *a* We will omit giving a particular statement of the case, and pass on to such parts of the opinion of the Court as we deem material to the present investigation. Lord Kenyon said, that a long string of cases might be cited in order to shew, that when an estate is limited to a man and *his heirs forever*, and if he die without *leaving heirs*, then to his brother, or to any *person who might be his heir*, those words shall not have their full legal operation, but shall be restrained to heirs of a particular kind, namely, *heirs of the body*.

*b* 7 D. & E. 551.

The next we shall notice is that of Wilkinson against South. *b* E. Parker bequeathed a certain leasehold estate to his wife Mary Parker, during the term of her natural life, and after her death to go to her son S. Parker and the heirs of his body lawfully begotten, and to them and their heirs and assigns forever; but in default of such *issue*, then, after his decease to go to his, the testator's, grandson, T. Wilkinson, the plaintiff, his heirs and assigns forever. The testator died, S. Parker him surviving, but Mary

JULY 1828,

Bell and Wife
v.
Hogan,

Parker died in his lifetime.   S. Parker after the decease of the testator, entered on the premises bequeathed, and died without having had issue of his body.   Lord Kenyon : the only question is, whether on a fair construction of the words of the will, the testator meant that the limitation over to T. Wilkinson, the plaintiff, should only take effect after an indefinite failure of issue of S. Parker, or a failure of issue living at the death of S. Parker; for as soon as that intention is discovered, there is an end of the case.   If personal property be so limited, that were it an estate of inheritance that it would give an estate tail, the absolute interest vests in the first taker; but if the limitation be with a double aspect to A. and the issue of his body, if there be any such issue living at the time of his death, if not, then over, it is a good limitation.   It was so settled in Sabberton against Sabberton, and a variety of other cases.   Here the words of the will are, to S. Parker and the heirs of his body, and to their heirs forever; if those words stood uncontrouled by any thing subsequent in the will, the absolute interest would have vested in him; but other words are added, "but in default of such issue, then, after his decease, to go to the testator's grandson."   There is a case in the books to shew, that *then* and *when* are adverbs of time.   Then at what time was the estate to go over to the testator's grandson? At the death of S. Parker, if he left no issue.   There is nothing in the will to shew that the testator intended that the limitation over should not take effect until future generations ; but, on the contrary, there is sufficient to shew, that the estate should in one event vest in the grandson at the time of the death of S. Parker, and that is within the time which the law allows in case of executory devises.

The rule respecting executory devises is extremely well settled, and a limitation by way of executory devise is good, if it may take place after a life or lives then in being, and within twenty-one years and the fraction of another year afterwards.   All of these cases, together with the case of Sheers against Jeffreys, [a] go, as we believe, fully to sustain the doctrine we have advanced on the construction of wills ; they all shew the extreme anxiety of the Courts to lay hold of any expression to unravel the meaning of the testator; and that they never will, if it can be avoided, construe the intention of the testator to

[a] 7 D. & E. 585,

be contrary to law. We are therefore of opinion, that the limitation over in the will of Thomas B. Whitmell, was good; and that Elizabeth took only a life estate in the negroes bequeathed her, and that consequently there is error in the charge of the Judge of the Circuit Court.

Another point of some difficulty presents itself. It is contended, that although the charge of the Judge may have been wrong, yet as the action is misconceived, the judgement in favor of the defendant must stand. It is contended that the release of the two brothers to Elizabeth, vests all their rights under the devise in the defendant, her husband. If the release had been made to the husband, the difficulty would have been lessened; but how can the husband succeed in right of his wife, to an interest that could not vest until her decease. It does seem, if the release was valid at all, that whatever interest it could convey at her death, would go to her legal representatives, and not to her husband; because, that it was an interest not taken in possession during the coverture. It is not necessary, however, that we should commit ourselves on this point. Formerly it was held, that an interest depending on a contingency could descend, but that it was not devisable nor assignable; though the law is now believed to be clearly settled otherwise. A distinction is made between a mere possibility, not based on and depending on contingency, that cannot be varied at will, and the mere possibility, perhaps probability, that a thing will happen, to result from a determination of the will of another: the latter class, it has been ruled, is not assignable nor deviseable; for instance, the release by a child, of all the interest he might have in his father's property, would not be binding on him, because it was a naked possibility dependant on the will of his father. The first class of possible future interest can be assigned. [a]

a 3 D. & E. 83.
Fearn 564.

There is yet another objection to the action. One of the brothers died before he arrived at the age of twenty-one; and although he left no issue, his rights could only descend to his heirs, through his legal representative, and the record does not disclose who is such legal representative. The interest, if divided in any possible way, would destroy the action of detinue. If the plaintiff has not the entire interest, she cannot recover in this action; and without determining how many shares of the property she is entitled to, we are satisfied that the whole interest

is not so vested as to enable her to maintain the action of detinue.

The Court are unanimous on the construction of the *will*, and a majority concur in the opinion that this action cannot be sustained, and the judgement must stand.

Judgement affirmed.

JUDGES CRENSHAW and WHITE not sitting.

NOTE. At a subsequent day of the term, the plaintiffs in error consenting to pay the costs of this Court, the cause was remanded for further proceedings below.