## McVAY'S ADM'R *vs.* IJAMS.

[DETINUE FOR SEVERAL SLAVES—CONSTRUCTION OF DEED OF GIFT.]

1. *Settled rule of property binding on courts.*—When a rule of property has been settled by judicial decision, and may reasonably be supposed to have entered into the business transactions of the country, it is the duty of the courts to adhere to it, and to leave the corrective to the legislature.

2. *"Heirs of the body' held limited by ' die leaving' to issue living at death of first taker, and reversion supported.*—A deed of gift was in these words: "I give, grant, and confirm unto my daughter Eliza a negro girl, named Perse, to have, hold, and enjoy said property and her increase during the natural life of my said daughter, which property, at her death, shall descend to the natural heirs of her body; provided always, and upon this condition, and it is the true intent and meaning of these presents, that in case my said daughter *die leaving no natural heirs of her body,* then, and in that case, said property shall revert back and form part of my estate": *Held,* on the authority of Bell and Wife v. Hogan, 1 Stew. 536, that Eliza took only an estate for life, and not the absolute interest; that the words ' die. leaving' limited the words ' heirs of her body' to issue living at the death of the first taker; and that on her death, leaving no living issue, the grantor's personal representative might recover the property.

APPEAL from the Circuit Court of Lauderdale. Tried before the Hon. JOHN E. MOORE.

DETINUE by Robert M. Patton, as administrator of Hugh McVay, deceased, for a negro woman (named Perse) and her three children, whom the said McVay conveyed by deed of gift to his daughter Eliza W. Martin. The court charged the jury, that the said deed of gift (for which see the opinion of the court) conveyed the absolute interest in the slaves to the said Eliza, and that consequently the plaintiff could not recover; and this charge, to which the plaintiff excepted, is now assigned for error.

R. W. WALKER, for the appellant:

The appellant insists upon two propositions, either of which, if established, shows the error of the charge. These propositions are, 1st, that the terms 'heirs of the body', as used in this deed, are words of purchase, and not of limitation; and, 2d, that, even if this is not so, yet the limitation over on the death of Eliza Martin is not too remote, and will be sustained.

1. In the construction of deeds, the cardinal rule is, to arrive at the true intent and meaning of the grantor from a fair consideration of the whole instrument, and to give effect to that intention, if it can be done without violating any rule of law; and if the instrument bears on its face evidence that it was written by an unskillful person, a greater latitude of construction is proper.—Hamner v. Smith, 22 Ala. 433.

When it is apparent that the word 'heirs', or 'heirs of the body', are used as descriptive of individuals, and not of the general line of heirs, they are considered words of purchase. Price v. Price, 5 Ala. 578, (581). The terms 'heirs', or 'heirs of the body', are susceptible of explanation; and, when explained, they are not words of limitation, but of purchase. Keyes on Chattels, §§ 252, 253 a; Dunn v. Davis, 12 Ala. 135; Powell v. Glenn, 21 ib. 458; Doyle v. Bouler, 7 ib. 246; Evans v. Wells, 7 Humph. 559; Hodgeson v. Bussey, 2 Atk. 89. And in this respect there is no difference between deeds and wills.—Supp. to Lewis on Perpetuities, p. 71; Keyes on Chattels, § 252; 2 Atk. 89; 5 Ala. 578. The words used in creating the limitation over in this case, (even if effectual for that purpose,) and the subsequent reference to Holloman, clearly show that by the terms 'heirs of the body' the donor meant *children*.—21 Ala. 466, and authorities *supra*.

2. The limitation over on the death of Eliza Martin is good as a contingent or conditional limitation. Contingent interests in personalty, and contingent or conditional limitations, may be created by deed without the intervention of a trustee.—Williamson v. Mason, 23 Ala. 488; Keyes on Chattels, § 344; Hill v. Hill, Dudley's Equity R. 71, (82). In conveying a perpetual title in personalty, a grantor may provide a contingency, or annex a condition, upon which the title shall determine and revert to himself.—Hill v. Hill, *supra;* see the general rule as to remoteness stated, in Keyes on Chattels, § 178. Courts catch at everything, even the most trivial expressions, to relieve themselves from the construction of indefinite failure of issue, when applied to personalty; and this, in order to support the limitation over. Flinn v. Davis, 18 Ala. 132–48; Isbell v. Maclin, 24 ib. 321; Hill v. Hill, *supra:* Keyes on Chattels, §§ 183, 187; 4 Kent's Com. 273–8; Williams v. Graves, 17 Ala. 62; 2 Russ. & My. 390; 2 Jarman on Wills, p. 419. The general rule as to remoteness yields to an intention in the context to use the words in the sense of issue living at the death.—See authorities last cited; also, 2 Russ. & My. 390; 1 P. Wms. 563; 2 Atk. 647; McGraw v. Davenport, 6 Port. 329. This intention is manifested where the words ' dying without leaving issue' are used, or where 'leaving' is inserted before 'issue',

or where the word 'then' follows 'death without issue.' Flinn v. Davis, 18 Ala. 146; Isbell v. Maclin, 24 *ib.* 323; Lewis on Perpetuities, p. 326, and Supp. 85; Keyes on Chattels, §§ 186, 187; 1 Call's R. 338; Dudley's Eq. R. 82; 4 Mon. 149; 2 Durn. & E. 720; 7 Ad. & El. 636; 3 Lomax's Digest, 304; 1 Dev. & Bat. Eq. R. 466; 1 P. Wms. 563, 663; 5 Humph. 505; 14 N. H. 215; 2 Jarman on Wills, 419; Bell and Wife v. Hogan, 1 Stew. 539–41; Doyle v. Bouler, 7 Ala. 246; 3 Dess. 256; 4 *ib.* 330; 3 Atk. 288. Where there are circumstances, or expressions, denoting a definite failure of issue, the limitation will be sustained, notwithstanding the words creating the previous estate, if standing alone, would create an express estate tail.—17 Ala. 62; 21 *ib.* 465; Barlow v. Salter, 17 Ves. 481. There is no distinction between deeds and wills, as to the effect which the use of such words as 'dying leaving no issue', and the like, will have in determining whether the limitation over is too remote. In both classes of instruments, they will be held to refer to a definite failure of issue.—See, particularly, Supp. to Lewis on Perpetuities, p. 71; 6 Hare, 151; 2 Atk. 89. That the words 'to descend to the heirs of their bodies', &c., have no special force in this connection, adverse to the appellant, see 17 Ala. 66.

WM. COOPER and JNO. S. KENNEDY, *contra:*

The deed of McVay conveyed an absolute estate to his daughter Eliza, and not merely a life estate. There are words in the deed utterly inconsistent with the idea of a limited estate in the first taker. The obvious intention of the grantor, to be deduced from the force and general tenor of the deed, was to convey to his daughters and a class of persons known as the "natural heirs of their bodies", which would embrace their descendants indefinitely, and however remote in the descending line. This is the evident intent and effect of the deed, and of itself establishes the position that it was intended to create an estate of inheritance in the descending line. But, in aid of this view, the words 'to descend to the natural heirs of her body' repel the idea that the children (if any) were to take by purchase, and fix the fact that they were to take by descent; and if so, then the first

16

taker took an absolute estate, unincumbered with reversions, and the plaintiff cannot recover. The decisions on instruments of this kind are so various, that we are often left much in doubt in attempting to reconcile them; but it is believed, on a close examination of the case, that the above positions are supported by the following authorities: 1 Preston on Estates, pp. 263, 419; Law Magazine of 1853, p. 368; 9 Gill's R. 432; 1 Hawks' R. 247; 1 Nott & McC. 69; 9 Yerg. 210; 4 Har. & McH. 393; Keyes on Chattels, §§ 246, 248, 249, 250, 254; Darden's Adm'r v. Burns, 6 Ala. 364; Machen v. Machen, 15 *ib.* 373; Ewing v. Standifer, 18 *ib.* 400; Hamner v. Smith, 22 *ib.* 433; Lenoir v. Rainey, 15 *ib.* 667. None of these cases are affected by Powell v. Glenn, 21 Ala. 458, which was mainly relied on by the plaintiff in the court below.

CHILTON, C. J.—This case turns upon the construction of the deed of gift, made by McVay to his daughter, Eliza W. Martin. The language is—"I give, grant, and confirm unto Eliza W. Martin, a negro girl, named Perse, to have, hold and enjoy said property and her increase, during the natural life of my said daughter; which property, at her death, shall descend to the natural heirs of her body; *provided* always, and upon this condition, and it is the true intent and meaning of these presents, that in case my said daughter above named die, leaving no natural heirs of her body, then, and in that case, said property above given to revert to my estate, to be repossessed and enjoyed by myself, or legal representative", &c.

Eliza, the daughter, died without leaving issue living at the time of her death, and the plaintiff, as administrator of McVay, who is also dead, brings his suit for the property; and insists, that by the terms of the conveyance there has been a reversion of the property back to him. On the other hand, it is contended, that the gift to Eliza vested the absolute interest in her; and so the primary court charged the jury.

It is difficult to recognize in Forth v. Chapman, 1 P. Wms. 663, the good sense of the distinction which gives to the same words used in the will an entirely different meaning when applied to real and personal estate,—that 'dying without leaving issue', when referred to land, should mean an in-

definite failure of issue, and create an estate tail, but, when applied to personalty bequeathed over in the same will, should mean a definite failure of issue—that is, issue living at the time of the first taker's death.   It is, perhaps, equally difficult to see the force of the distinction taken by many of the authorities between ' dying without issue' and ' without *leaving* issue.'   Upon both of these points, there is a distressing conflict of authority, as there will generally be, when, in the astuteness of courts to carry out what they suppose to be the intention of testators, distinctions are seized hold of which have no foundation in reason, and which, we can hardly suppose, ever entered into the mind of the testator.   When, however, a rule of property has been adopted by judicial decision, and may reasonably be supposed to have entered into the business transactions of the country, it is our duty to adhere to it, lest we should overturn titles founded upon it.   In such case, it is better to leave the corrective to the legislature.

In Bell and Wife v. Hogan, 1 Stew. 536, decided in 1828, the testator lent to his daughter six slaves, naming them, and their increase, during her natural life; and if the daughter should leave an heir, or heirs, lawfully begotten of her body, he gave the said slaves to said heir or heirs so begotten, to them and their heirs forever ; and for want of such heirs, he desired that said slaves, with their increase, should be equally divided among his four children, naming them.   It was said by the court, Chief Justice Lipscomb delivering the opinion, " The failure of heirs must refer to the failure of her issue, and the word 'leave' sufficiently limits the time when the devise is to take effect ; that is, if at all, at the death of the first taker."   The deed under consideration was executed several years after the decision above alluded to, and, for aught we can know, was influenced by it.   Be this as it may, we do not feel at liberty to depart from that decision at this late day, when it has never been overruled, but has incidentally been recognized by several subsequent decisions.—See, also, Keyes on Chattels, §§ 186, 187, and cases cited by this author.

It follows that, as the term ' heirs of the body' of the daughter is limited by the term 'leaving' to issue, living at the death of the first taker, the doctrine applicable to estates tail

cannot be applied. The reason why the words 'heirs of the body' ordinarily create an estate tail is, that they include issue *in infinitum*. They cease to have this effect when limited to issue living at the time of the first taker's death.—Hodgeson v. Bussey, 2 Atk. 89.

Adhering to the principle settled in the case of Bell and Wife v̇. Hogan, *supra*, there is a clear distinction between this case and those cited by the counsel for the appellee from our own reports.

By the term 'to *descend*' to the natural heirs of her body, &c., we merely understand the testator to mean that it *shall go* to them, as succeeding the parent, and not as affixing a descendible quality to the property. There is, technically speaking, no such thing as personal property descending to heirs : it goes to personal representatives, and by distribution to the heirs. Yet, under the rule in Shelley's case, which we have held applies to personal property, when the terms 'heirs of the body', or 'heirs generally', are not merely *descriptive of the particular* persons to take under the deed or will, but as designating the line of descent, the absolute interest passes. In this case, under the rule in Bell and Wife v. Hogan, the words are descriptive of a particular class of persons who are to take—issue of the daughter living at her death—and, consequently, the rule which enlarges the first estate for life into an absolute interest, and cuts off the limitation over in default of such issue, does not apply. In such case, the limitation over in default of such issue is good, and if it fails to take effect as a limitation, there is a *quasi* reversion to the grantor, or his legal representatives as to his personalty, if he be dead.—Williamson v. Mason, 23 Ala. 488.

The attempt here to create a reversion by deed cannot prevail, as a reversion is the act of the law, and cannot be so created. But this limitation to the grantor, or to his representatives, if dead, is void because the law accomplishes the same thing.

There is, therefore, a *quasi* reversion of the property to the appellant, the representative of McVay; and the court mistook the law, in holding that the daughter took the entire, absolute interest in the property.

Judgment reversed, and cause remanded.