FELLOWS, WADSWORTH & Co. v. TANN, BY HER NEXT FRIEND, ET AL.

1. *Semble*, where the father gave personal property to a daughter by a deed, who was a *feme sole*, but who afterwards married, and together with her husband retained possession under the deed for more than twenty years, it will be presumed, (in the absence of an intention to defraud,) against the husband, or his creditors, that the property was not the daughter's, but was the father's at the time of the gift.
2. Where property is given by a father to his daughter, who was a *feme sole* and competent to take it, a court of equity will not allow her subsequent marriage to impair her rights, merely because a trustee was not interposed.
3. A father gave to his widowed daughter, " and the heirs of her body," by deed, a female slave, who he provided should be under her control and employment, in the most profitable way, for the use and support of herself and "her heirs," during their lives; after her death it was directed that the property should be divided " among her heirs." In a short time after the gift, the daughter took possession of the slave, who, together with her increase, have for more than twenty years been treated as the separate property of the daughter and her children; though the daughter married very soon after acquiring the possession: *Held*, that the deed invested the daughter and her children collectively, with interests which the creditors of the husband could not divest, as it respects the children, through the medium of any *forum*, and as it respects the daughter, (his wife,) not by levy and sale under execution against his estate; if the husband, in virtue of his marital rights, has an interest in the slave, and her increase, or the profits accruing from their employment, a creditor must proceed in equity to subject it to his judgment; *further*, that as the daughter has become covert, a court of equity may appoint a trustee in whom the legal estate shall be vested, so as to support the purposes of the deed.

Writ of Error to the Court of Chancery sitting at Livingston.

THE defendants in error filed their bill in May, 1844, setting forth that James Daniel, the father of Jane Tann, one of the complainants, executed a deed on the 17th June, 1820, by which he gave a female slave named Winney, then fifteen years old, to his daughter, Mrs. Tann, then a *feme sole*, and widow of Hugh Barnett, deceased, " and the heirs of her body," " on the following terms, that is to say: I leave the said girl to Jane Barnett,

during her, the said Jane's natural life, forever, and the heirs of her body, with this condition, that the said girl Winney shall be under the entire control and management of my said daughter Jane, in the most profitable and useful way, for the use and support of her, the said Jane, and her heirs during their natural life. After the death of the said Jane Barnett, the said negro girl Winney shall be equally divided among the heirs of the said Jane Barnett." Shortly after this deed was executed, Winney went into the possession of Mrs. Tann, and has been treated ever since as the separate property of herself and children. In July, 1820, Mrs. T. intermarried with her present husband, Alfred Tann, then residing in Greene, and shortly thereafter the deed in question was recorded in the County Court of that county. Winney had a numerous increase, the names of all her children are mentioned in the bill.

It is further stated, that A. Tann has now some half dozen children residing in his family, who are dependent upon these slaves for their maintenance and education, as he himself is very poor, and is unable to assist them.

The plaintiffs in error, in February, 1840, recovered a judgment against A. Tann, in the County Court of Sumter, for the sum of $1745 61, and $64 67, costs of suit, on which execution has issued, and been levied upon the slaves described in the bill, by the sheriff of Sumter, who will sell the same unless restrained by injunction, and the object of the settlement upon the complainants will be defeated, the slaves removed, &c. The plaintiffs and defendant in execution, are all made defendants to the bill, an injunction prayed, and a reference " to the Master, to appoint a suitable trustee to act under the said trust, during the life of the said Jane;" " that the sheriff may be ordered to surrender up the said slaves on the complainant's entering into such bond, and complying with such terms as your honor may require ;" and for such other and further relief as may be proper.

An injunction was granted accordingly, and an order made to re-deliver the slaves by the sheriff upon the conditions proposed by the bill. Afterwards the defendants moved to dismiss the bill for want of equity, which motion was overruled.

Fellows, Wadsworth & Co. answered the bill, avowing their entire ignorance of the matters alledged therein, and praying that the complainants may be required to prove the same, with the

exception of the indebtedness of A. Tann, which they explicitly affirm, and pray that their answer may also be regarded as a demurrer, and for cause say that the bill does not disclose a case which entitles the complainants to the relief they seek. *Subpoena* having been served upon the defendant Tann, and he failing to answer, the bill as to him was taken *pro confesso.*

Elizabeth Condy was examined as a witness for the complainants, and testified that she saw the deed under which they claim executed by the donor, James Daniel, and attested by the subscribing witnesses, John Emmerson and Dixon Loggins, about the time it bears date. The donor she knows is dead, and she has understood that the witnesses are also dead. When the deed was executed in 1820, the donee was a widow, named Jane Barnett; she has since married Alfred Tann. Witness knows the slave Winney, that she has been, and still is, in A. Tann's possession—thinks she has had ten or eleven children, some of whom have died—does not know the names of the younger children, states the names and ages of the elder. Winney was in possession of Mrs. Tann when the deed was executed, and has been ever since, with the exception of one year, when she was hired out.

Sarah Cates was also examined at the instance of the complainants, and testified that she had known the woman, Winney, eighteen or nineteen years; that she had been, and still was, in the possession of A. Tann; was the mother of eight children, seven of whom are living, the names and ages of whom she states.

The Chancellor was of opinion that the allegations of the bill were supported by the proofs in the cause ; that it was the intention of the donor, as indicated by the deed, to give to Mrs. Tann such an interest in Winney and her increase as could not be subjected to the payment of her husband's debts. It was accordingly adjudged, that the execution of Fellows, Wadsworth & Co. be perpetually enjoined in respect to the property in question, and that the Master report a suitable person for trustee to carry into effect the purposes of the deed, &c.

W. H. Green, for the plaintiff in error, insisted that the bill wants equity, and should have been dismissed by the Chancellor —*Further*, that the final decree is erroneous.  [O'Neal, Michaux

& Thomas v. Teague, 8 Ala. 345, is a direct authority to show, that the wife has not an estate to her separate use, and that the slaves àre subject to sale for her husband's debts. There is nothing to show that the words "heirs of her body," were not used in the sense in which they are usually understood in law. They must therefore be taken as words of *limitation,* and not of purchase; and the wife being the *first taker,* will have the absolute estate.

R. H. SMITH, for defendants in error, contended, that the words "heirs," and "heirs of the body," are used in the deed under which the complainants claim as synonymous with children; that the deed contemplated an enjoyment of the gift by the children, during the life of the mother, Mrs. Tann; that this intent being consistent with law, should be upheld by a Court of Equity. [1 Mylne & K. Rep. 316; 2 W. Bla. Rep. 1010; 10 Bing. Rep. 198; 5 Ves. Rep. 399; 8 Cond. Eng. 67; 2 Hawk's Rep. 472.]

The intent of the donnor cannot be carried out, unless Winney and her children are permitted to remain in Mrs. Tann's possession. [Clancey on Rights, &c. 256, 446-7-8.] The husband acquired no right to them, could not sell them himself, and they cannot be disposed of by an execution against him. [8 Yerger's Rep. 33; Harp. Eq. Rep. 243.]

It was the intention of the donor to settle an estate upon his daughter and her children, which would not be subject to the marital rights of her husband. So far as it related to the latter, the estate was for her separate use. If the deed cannot operate at law in favor of the wife, a court of equity will perfect the settlement. [2 McC. Ch. Rep. 368, 372; 3 Lit. Rep. 13; 2 Dana's Rep. 437.] The answer does not deny any allegation of the bill, and the testimony very satisfactorily proves every thing that is material.

COLLIER, C. J.—The proof very satisfactorily establishes the execution of the deed about the time it bears date, its attestation by the subscribing witnesses; that Winney and her children have been, and were in Mrs. Tann's possession when levied on, the names of the children, &c. If the testimony is defective in any thing, it is in the omission to prove that the donor was the owner of Winney at the time the deed was executed. But the

examination of the witnesses by both parties seem rather to treat this as a conceded point, by the failure to call the attention of the witness to it by a direct inquiry. But suppose that Mrs. Tann was herself the proprietor of Winney, if she assented to hold under the deed, accepted it from her father's hands, and it has been ever since acknowledged by herself and husband, will it not now be supported in the absence of an intention to defraud? Or is not the acceptance of the deed equivalent to proof of the donor's right, and will it not estop the husband, who never objected to it, or his creditors from setting up rights in opposition to it? In the one view or the other, the evidence is quite sufficient.

There can be no inference prejudicial to the wife or her children, from the failure of the donor to interpose a trustee. Formerly considerable doubt existed, whether a gift to the separate use of a married woman could be maintained against the legal rights of her husband, without vesting the estate in a trustee for her use. But it may now be regarded as settled law, that such a gift vests an interest in her in equity, and a Court of Chancery will decree the husband to stand as a trustee, for his wife, or direct one to be interposed. [Clancy's Husb. & Wife, 256, 261.] In the present case, Mrs Tann was a *feme sole* when the deed was executed, and of course competent to hold property under a gift or conveyance made to herself directly. This being the case a subsequent marriage could not affect her rights in a court of equity.

The words " heirs of the body," it has been held, create an estate tail, unless they are restricted by some expression indicative of an intention that the first estate shall cease on the first taker's dying without issue at the time of his death. And when applied to gifts or bequests of personal estate, vest the entire property in the first donee. [Darden's Adm'r et al. v. Burn's Adm'r and another, 6 Ala. Rep. 362.] The obvious interpretation of the deed we are called on to consider, is a gift to the donor's daughter and her children ; but the subject of the gift is placed under the control of the mother, who was authorized to employ Winney and her increase "in the most profitable and useful way for the use and support" of herself and her children. The intention of the donor is very clearly indicated. It was to provide for the maintenance of the donee then in life, and such children as she had, or might give birth to. Those born at the time the gift was made,

if any, were entitled to a proportionate share for maintenance, and those afterwards born, would, as they came into being, be let into an equal participation in the profits.

The children, during the life of their mother, were not entitled to the possession of the slaves in question, nor had they any specific property in them; their interest extended only to a support from the profits derived from their employment. This is shown by the direction that " Winney shall be under the entire control and management of the mother during her life; and after her death the property in the slave, and her increase, shall vest in the children." Here we perceive the donor has provided for the maintenance of his daughter and grand-children, by vesting certain property in the former, and devoting the income to that object. This provision invests the mother and her children collectively with interests which the creditors of the husband cannot divest, as it respects the latter, through the medium of any *forum*, or as it regards the former, certainly not by levy and sale under execution.

In Spear v. Walkley, at this term, a testatrix bequeathed by her will to A. S. certain slaves, " to be held and worked by him for the use of his wife and children, but subject in no way to his debts, contracts or judgments, and at his death to be equally divided among his children," &c. Held, that A. S. had no such interest in the slaves themselves, as is the subject of levy and sale under execution; that the title was vested in him to work for the use of his wife and children, and if they could be taken from his possession by a creditor, the trust, instead of being carried out, would be defeated *in toto*. "On the other hand, if the profits of these slaves, when worked, constitute a fund when divided between the wife and children, then the wife's share of what devolves upon the husband, can only be separated and ascertained by a court of equity." This decision is directly in point, and shows that the slaves in question cannot be sold under execution, to pay the debts of the husband of Mrs. Tann, without defeating the income from labor which the donor looked to, for the maintenance of the objects of his bounty.

Whether the wife has a separate estate under the deed for her own benefit, we need not inquire; for be this as it may, it is a clear result from the case last cited, that her husband has not such an estate in the subject of the gift as could be seized under pro-

Fellows, Wadsworth & Co. v. Tann, &c.

cess issuing upon a judgment against him. If, in virtue of his marital rights, he is entitled to a share of the accruing profits, a question upon which we forbear even to intimate an opinion, his creditor who would seek its appropriation, must resort to a court of equity, that he may have the interests of the debtor separated from those of the children.

The object of the bill in the case at bar, is to secure the property that it may be made subservient to the purposes of the deed; and in this view, if no other, it is clearly defensible. It is proper as the mother is a *feme covert*, that equity should designate a trustee, who shall become a depository of the legal estate. This has been directed by the Chancellor. As then, the levy was unauthorized, and could only be arrested in equity, the decree perpetuating the injunction is correct, and is consequently affirmed.