WILLIAMSON & WIFE *vs.* MASON.

1. An ante-nuptial contract stipulated that the husband should " receive and enjoy, during the life-times of " himself and wife, "all the rights and profits of the" wife, "and at their decease to descend to the heirs of the body of the" wife "which may survive at that time"; and that the wife " should have no part or portion of the property now owned by" the husband "after his death": *Held*, that the marital rights of the husband were not excluded by the deed, but, having reduced the wife's property into possession during coverture, he thereby became entitled to it until the

death of himself and wife as absolute owner, subject to the contingent limitation to the heirs of the body of the wife who might be living at that time.

2. The rule in Shelley's case enlarges the estate of the first taker only when his heirs general, or the heirs of his body, are the objects of the limitation, and when they take by descent from him, and not as purchasers under the deed; it therefore has no application when the deed is to the husband, for his life and that of his wife, with contingent remainder to the heirs of the body of the wife who may survive them.

3. A contingent interest in personal property, or *quasi* contingent remainder, may be created by deed without the intervention of a trustee.

4. When land is sold under an order of the Orphans' Court for the payment of the debts of the estate, and a surplus remains after paying all the debts, it goes to the heirs as the land itself would have gone.

5. An administratrix is entitled on final settlement to a credit for reasonable counsel fees paid in defending against a previous application for final settlement, to which she had been cited by the distributees before the expiration of eighteen months from the grant of letters.

ERROR to the Court of Probate of Wilcox County.

GEORGE W. WILLIAMSON and Martha J., his wife, filed their petition in the Probate Court of Wilcox, setting forth that one Jonathan Mason, late of said county, died intestate on the 15th of August, 1849 ; that said Martha is his only heir at law; that Lucy H. Mason, the widow of said intestate, administered upon his estate in Wilcox County, and took possession of all the property of the estate as such administratrix; that said Martha J. is entitled to one half the personal estate and all the real estate (saving to said widow her dower) which belonged to the intestate at the time of his death.

The petitioners set forth the names of divers slaves belonging to the estate, which came to the possession of the administratrix ; aver that the debts due from the estate have been paid, and that more than eighteen months have elapsed since the grant of administration; and pray for a rule against the administratrix to compel her to make final settlement, and that the petitioners recover for the use and benefit of the wife, the share to which they are entitled.

Mrs. Mason, after having been served with a copy of the petition, filed an answer thereto, in which she states, that in 1826 Aaron Baldwin, at that time her husband, died intestate leaving her and eight children and a considerable real and personal estate ; that she, with one McLendon, administered thereon in

59

Wilcox County; that she married Jonathan Mason, the intestate, in 1828, who thereupon became co-administrator in her right upon the estate of her former husband, Baldwin; that previous to her marriage with Mason they entered into a marriage contract, dated 28th of November, 1828, whereby it was covenanted and agreed as follows:

"Whereas a marriage is shortly intended to be solemnized, by the permission of God, between Jonathan Mason and said Lucy Baldwin, and whereas said Lucy is heir to a considerable personal estate, claimed by her as widow and heir of the late Aaron Baldwin, deceased, consisting of negroes, bonds and money, as yet undivided; and whereas it is agreed that said Jonathan Mason, after said intended marriage is had, receive and enjoy, during the life-times of the said Lucy and Jonathan, all the *rites* and profits of said Lucy Baldwin, and at their decease to descend to the heirs of the body of said Lucy Baldwin, which may survive at that time; and it is further agreed that the said Lucy Baldwin have no part or portion of property now owned by the said Jonathan Mason after his death. In testimony," &c.

The respondent then avers that she received, as her distributive share in her first husband's estate, $1456 07 in money, and six negro slaves, all which went into the possession of Jonathan Mason, the intestate; that the slaves have now increased to twenty-three in number, and that the remaining property both real and personal, in possession of said Jonathan Mason at the time of his death, was purchased by him after his marriage with the respondent with money which was the proceeds of the labor of said slaves, the property of the said Lucy. She insists that said Jonathan never claimed said property as his, but always during the coverture acknowledged her right to the same.

Respondent further answers that the personal estate of the intestate, exclusive of the slaves, being insufficient for the payment of the debts, she petitioned the Probate Court, according to the statute, for leave to sell the real estate in lieu of the slaves, as most conducive to the interests of the estate; that this was done at the request of the plaintiffs in error, who were made parties to the proceeding, and who made no objection to such order. She claims that the estate is her debtor for the $1456 07 received by the intestate, and that she is exclusively

Williamson & Wife v. Mason.

entitled to the property and its proceeds which came to her said husband's hands as her share in her former husband's estate.

This answer was demurred to, and the demurrer having been overruled, the plaintiffs took issue upon it, denying its allegations.

On the final settlement, as appears by the decree, it was shown that Martha J. Williamson was the only heir of Jonathan Mason, the intestate; that Lucy, the administratrix, was his widow, and that they were the only persons entitled to share in the distribution of his estate.

It was shown that the marriage contract before recited was entered into ; that the marriage was solemnized shortly thereafter ; that $1456 07, and the six negroes, were received by the intestate as the share of Lucy Mason in her former husband's estate ; and that the husband (Jonathan) had retained the same in his possession until his death, having stated, about a year after his marriage with said Lucy, to one McLeod, that he then owned no property except a horse, and that the slaves so received by him belonged to his wife.

Said Lucy also introduced in evidence a paper, which she proved to be in the hand-writing of said Jonathan, and which is as follows : "A list of my property in truth and honesty, before God and man, which every dollar of should belong to Martha J. Mason, my daughter, at my death." Here follows a description of certain lands, live stock and other personal property, embracing eleven negroes by name, and a memorandum of money due him and of the amount of his indebtedness, as also of four other slaves belonging to him at W. T. Mason's. This is signed by him, and dated the 6th day of July, 1842.

It was proved that the slaves mentioned in the memorandum were slaves purchased by Jonathan Mason after his marriage with said Lucy.

The proof further showed that the intestate owned at the time of his death two tracts of land, for one of which he had only made partial payment. These were sold under the statute, (Clay's Digest 195 § 18,) instead of the slaves, and a surplus remained after the payment of the debts. This surplus was claimed by the plaintiffs for Mrs. Williamson as heir at law, and by the administratrix as assets for distribution. The court held that it descended to the heir, as the land would have descended had no sale been made.

The administratrix claimed to be allowed one hundred dollars credit upon her account, which was proved to be a reasonable compensation to Messrs. Stone & Judge, in defending her against a previous application for settlement made by the plaintiffs before the eighteen months had expired.—See the decision of the Supreme Court upon this application, 18 Ala. 87. The Probate Court refused to allow the item as a charge against the estate, and the administratrix excepted.

The Probate Court decreed that the twenty-three slaves embraced by the marriage contract above referred to, together with the sum of $1456 07, should be retained by the administratrix; that the surplus of the sales of the land belonged to the heirs as real estate, and that the widow took no interest in it; and that the remainder of the estate should be equally divided between the administratrix and the said Williamson and wife for the use of the latter.

Both the parties are dissatisfied with the decree, and assign errors in this court.

ELMORE & YANCEY, for plaintiffs in error:

The first question to determine is, whether personalty can be limited as fixed by this instrument. The following propositions are undeniable:

1. At common law, originally, no remainder could be limited on a chattel after a life estate, either by will or deed.—Lewis on Perpetuities, top pp. 92, 93, 99; Williams on Personal Property, top pp. 123, 124.

2. Such limitations were at length permitted by will, or deed to trustees, but in no other manner.—Lewis on Perpetuities, top pp. 93, 94, 95, 99, 100, 101; Williams on Personal Property, top pp. 124, 125.

3. It is the settled law in the English courts, that a remainder in personalty can only take effect as a bequest, or by deed through the medium of trusts.—Lewis on Perpetuities, top pp. 100, 101, 103, 104; Williams on Personal Property, top pp. 124, 125, 187.

On pages 124 and 125, of Williams on Personal Property, will be found his remarks, which are referred to by the opposite counsel as sanctioning the idea that a remainder in personalty may be created by deed, without the form of a trust. He says:

" In equity, therefore, under a gift of personal property, of any kind, to A for life and after his decease to B, A is merely entitled to a life interest, and B has during the life of A a vested interest in remainder"; and refers in note m. to Fearne on Con. Rem. 407, and 1 Coll. 285. The author is discussing the distinction in courts of law and equity in regard to the title, and says that at law the entire interest is in the first taker, but courts of chancery carry out the intention of the parties, and adopt a different rule from courts of law; and that wills are in the nature of trusts over which courts of chancery can and will take jurisdiction and enforce them. Gifts are bequests; when the term is used in the English courts, it is always meant gifts by will. Mr. Williams did not mean that a limitation by deed without trust was good, or, if he did, he is not sustained by his own references, or by any case in the English books. He has no where said that such a limitation by deed without trustees was valid. All the cases in Fearne, from page 402 to 407, which are the citations from Williams, arose on bequests; and the case from 1 Coll. was on a will. After giving illustrations, Williams proceeds on page 125: "Where, therefore, it is wished to make a settlement of any kind of personal property, the doctrine of the court of chancery is at once resorted to.— The property is assigned to trustees in trust," &c.

Again; on page (top) 187 he says : " Lands, &c., may be held for life, or in tail, as well as in fee, and may be disposed of by contingent remainders, shifting uses and executory devises, without the intervention of trustees. Personal property, on the contrary, cannot be settled without the intervention of trustees." On page 35 (top) he says : " But the law knows no such thing as a remainder or a reversion of a chattel."

On page 127 (top) he says : " But a gift of personal property to A for life, and after his decease to B, gives to B a vested equitable interest," &c., and refers to 2 Brown Ch. 75. This was on a bequest.

The opposite counsel has cited page 127 (top) of Williams on Personal Property. This we think entirely with us. The instances cited prove it; in the one case, by deed to trustees, and in the other, by bequest.

We are obliged to conclude, that, when Mr. Williams used the term "gift" he meant by will, since such is the usual mode

of expression in the English courts, and since all the cases referred to by him are on wills, and since he says himself, where it is desired to make a settlement of personalty, the rules of the courts of chancery, that is trusts, are resorted to.

We will here remark, although Williams and Lewis both speak of such limitations as taking effect in the nature of springing or shifting uses or executory devises, or on the same principle, it is questionable, (we might say impossible,) for them to take effect as springing or shifting uses, because the doctrine of these uses is applicable strictly to lands alone, being modes of settlement by instruments *inter vivos*, based upon the statute of uses, and arising solely on the trusts created by the instruments. But, if the doctrine is held applicable to personalty, then there must be a conveyance to trustees, declaring the use, &c. For a short but clear and comprehensive view of this doctrine, see Lewis on Perpetuities, top p. 103.

On page (top) 104, Mr. Lewis says, in relation to limitations of chattels by deed : " The limitation by way of trust is resorted to from imperative necessity, there being no mode known to the common law by which future and executory interests in chattels may be created by instruments *inter vivos*," and adds that executory devises and bequests, and springing and shifting uses, differ only in the quality of the estate created by them respectively; and that whatever estate may be created by will, may likewise be settled by deed through the medium of trusts, that is, when settled by will, each one who takes, takes the legal title, but when by deed, through the medium of trusts, takes the use only.

Both these authors, Lewis and Williams, agree that such limitations cannot be created except by will or as trusts declared by deed.

Blackstone in his 2 Book, vol. 398, after giving a history of the progress of the law on this subject, says : " But now that distinction is disregarded, and if a man either by will or deed limits his books or furniture to A for life, with remainder over to B, this remainder is good." He is speaking of the distinction between the use of the thing and the thing itself, which distinction is now done away with. To ascertain if he meant that such limitations were good, when made by deed without trusts, we must examine the authorities cited in the note. The

case in 2 Freeman 206, we have not been able to find reported, but the same case is referred to in Fearne on Con. Rem. 406, and it was upon a bequest of goods ; and the point decided was, that there was no difference between the gift for life of the goods, and of their use for life. The case of Childs v. Childs, Cro. James 459, was a case on a bequest.

We have examined every English case cited in any of the books, and none of them sustain the opinion that such limitations can be made, unless by will or deed by way of trusts. It may be regarded as the settled law in England, without a single authority to the contrary, that the limitation in favor of the heirs of the body of Lucy Mason is void, and that the husband took the entire interest.

In the American courts we have been unable to find the point decided, except in two States, North Carolina and South Carolina. Chancellor Kent, vol. 2 p. 352, says : "Chattels may be limited over by way of remainder, after a life interest in them is created, though not after a gift of the absolute property. The law was early settled that chattels real might be so limited by will. A chattel personal may also be given by will (and it is said that the limitation may be equally created by deed) to A for life, with remainder over to B." He expresses this doubtingly, by the terms "it is said," and refers to 2 Blackstone 398, and Cro. James 459, which have already been noticed, and do not authorize the doctrine.

On the next page he says : " This limitation over in remainder is good as to every species of chattels." In the notes b and c, he refers to English cases, every one of which is on wills, so that he also meant limitations by will or deed to trustees.

All the American cases cited by Kent in notes b, page 352, and d, page 353, in favor of the limitations, arose on wills, except those from South Carolina.

Powell v. Brown, 1 Bailey 100, admits that the law as decided in England prohibits the limitation, but decides differently, and attempts to sustain the decision by the authority of cases in Bay and Dessaussure. Dolt v. Cunnington, 1 Bay 447, only decides that a limitation for life, and then to the heirs of the body of the first taker, gave to him the whole interest. The point we are considering was not made or decided. Dolt v. Wilson, 1 Bay 452, was upon a will; Stockton v. Martin, 2

Bay 471, was upon a will; Tucker v. Stevens, 4 Des. 582, was on a deed, signed by donor and donee, containing a covenant that the donee should hold the slaves for life, and at her death they should return to the donor and his heirs, unless, &c.

The point was not made or decided, but, if it had been made, the decision would be sustained on the ground of the donee's covenant, to the performance of which as a trust the court of chancery would compel her.

Millidge v. Lamar, 4 Dess. 617, was decided on the ground that the deed and will both formed one testamentary disposition alone, and therefore was on a will. So that the case of Powell y. Brown is not sustained by any English or American case ; and the observation of the court that the question's not having been previously made was an argument in favor of the limitation is entitled to no weight. This fact, in our opinion, proves nothing, except that the lawyers did not understand the English decisions, but were probably misled by the term " gift." But the court refers to a decision pronounced by Judge Wilde, which, however, was never printed, affirming the English doctrine. In Brummet v. Barb, 2 Hill 543, that court has gone to the utmost extent ; they say a delivery, with a parol declaration of the different interests intended to be given, will be a good limitation. But they have been compelled to put it on the doctrine of trusts, thus showing that the English cases are right. But is it not strange that the English lawyers never made the discovery that when A received personalty under a deed to him for life with remainder to B, that A was a trustee for himself and B ? Indeed, in the case just cited, it is said all bailments are trusts. This shows the shifts to which courts are driven when they depart from the established rules of law, because they cannot see the reason.

The cases in North Carolina sustain us. Judge Hall, in 2 Hawks 323, says : " As to personal chattels, it remains the same unless such limitations over are created by will or by trust. I am not aware of any case that can be shown to the contrary." Graham v. Graham, 2 Hawks 322 ; Morrow v. Williams, 3 Dev. 263 ; Sutten v. Hollowell, 2 Dev. 185.

But, admitting that such limitations are good, they can only be permitted to take effect as an executory devise, or on the same principle that such bequests are allowed ; or, if it is in-

sisted that the doctrine of springing and shifting uses must be applied to this instrument, we think it equally clear that the remainder has been defeated, and that the slaves belong to the estate of Mason.

One of the rules applicable to springing and shifting uses and executory devises, is, "that whenever a future interest is so limited or devised as that it may take effect as a remainder, either vested or contingent, it shall never be construed to be a springing or shifting use or executory devise. Thus, if land be limited in use or devised to A for life and after the decease of A and B to C in fee, this is a contingent remainder to C, and the limitation shall not be supported as a springing use or executory devise in the event of A's decease in the life-time of B, which will prevent its taking effect as a remainder."

This rule has uniformly prevailed without any exception to the contrary.—Lewis on Perpetuity, top page 109, and cases cited in notes.

" Thus if a person limit or devise property to A and B for their joint lives, or to C for the joint lives of A and B, and after the decease of both A and B to D, D takes a contingent remainder which will fail, unless in the most improbable event of the simultaneous extinction of both the *cestuis que vie.*"— Lewis on Perpetuity (top page) 110.

The true construction of the instrument is, to give to Mason the property for the joint lives of himself and wife, and on their death to the heirs of her body—in which case, on the death of either himself or wife the remainder was to take effect; or it gives to Mason an estate for his own life, and at his death remainder over. The latter construction would seem most probable from the situation of the parties. The other is the construction from the plain import of the words. There is no difference in the meaning of the words " during the life-times of the said Jonathan and Lucy, and at their death," and the words, " to A for life and after the decease of A and B to C;" in both and all the law says it means joint lives and death of either, so that on the death of either the remainder must take effect or not at all.

It cannot be denied this remainder was created and intended to take effect as a remainder, and that it might have vested as such by the death of the wife before the husband, leaving heirs

of her body surviving. Then if such is the case, if on the happening of the event when it was to vest, there is no one *in esse* to take, the slaves must belong to the estate of Mason. It is insisted, that Mrs. Mason takes an interest for her life, and on her death the heirs of her body may then take by way of springing use. This has been answered by the rule that in deeds or even in wills, where the future interest is created by way of remainder, if by possibility it can take effect as a remainder, it shall never assume another form as a springing use or executory devise. It was possible for Mrs. Mason to die first, indeed for both to die at the same time; and in such cases being limited as a remainder, it must take effect as such or not at all. Nor has Mrs. Mason any reversionary interest in the negroes. As shown above, there is no such thing as a reversion in chattels. But if there was, Mrs. Mason by the instrument parts with the entire interest, and this shows that she did not intend to reserve any thing to herself, but to give it to those named if they could take; and if they could not take, then the law says she intended to give it to those whom the law says should take on the happening of the event to determine this question. In other words this was her deed : I give these slaves to my husband during our lives; if I die before him, then to the heirs of my body surviving me. If he dies before me, then to him, his executors &c.

It is said, however, that the rule above laid down as to remainders taking effect as such applies only to realty. The court will see that we do not put it on the ground that the particular estate is destroyed before the time for the remainder to vest, but on the ground that certain persons as a class are to take on the happening of a particular event, and all who answer that description when the event happens take; but if there be none of that class, what is to become of the property? It can't revert. Suppose Mrs. Mason had died first, leaving no heirs of her body. In contemplation of law, the same results happen from Mason's dying before her. For the contingency of his dying first they did not provide in the instrument, but the law has made the provision. If the instrument had said, " and if on their death there should be no heirs of the body of the said Lucy surviving, then to her if she be living, and if dead to her next of kin," would a moment's doubt be entertained that Mrs. Mason would under the deed, she living at Mason's death, have taken the ne-

groes absolutely, and not as trustee to hold until a use should spring up by her death for the heirs of her body.

But this limitation can be sustained only by the application to it of the rules governing springing uses and executory devises. On this ground alone have they been permitted in the English courts either by will or as trusts by deed; and it will not be permitted in one breath to say they are of that nature, and in the next to deny that an invariable rule of such limitations is not applicable to personalty. We have always understood that more latitude was given in the settlement of real than personal estate ; but a contrary doctrine must be established, if the views of the counsel opposed to us prevail.

WATTS, JUDGE & JACKSON, *contra:*

1. Under the deed of marriage settlement, we concede that the husband took a life estate, there being no words excluding his marital rights. But did he take an interest longer than his life-time, the wife surviving him? If the word " life-times," used in the deed, means during her life-time as well as his, then it would follow that his interest, or rather that of his executors since his death, would embrace her life-time also. Does he take any other or further interest? To solve this question will depend, first, upon whether the children of Lucy Mason are so designated in the instrument, as that they will take as "purchasers." The language is, that at their decease, the property is " to descend to the heirs of her body, which may survive at that time;" i. e. at her death, as the matter now stands. This language, if it were used in reference to real estate, would not create an estate tail. It needs no authority to show this. It follows, then, that by the use of these words the children of Lucy, who may survive her, are intended to be designated as a class, to take the property at her death. And it will follow necessarily that the children of Lucy, who may survive her, will take at her death, unless some technical rule of the law prevents.

Now it is contended that the termination of the particular estate, or rather the death of the husband before the time when the children of Lucy can take by the terms of the deed, vests the whole interest in the husband. If the same rule, which applies to real estate, were applicable to personal property, we

would not controvert this position of the opposite counsel.   But it is well settled by authority that there is no such rule as applicable to the latter species of property.—See Williams on Personal Property, top page 127, and the authorities there referred to.   The case he puts is in principle precisely such as the one at bar.   Then, under this view, the property would have to be distributed to the heirs of Mason, to be held by them only during the life-time of Lucy.   At her death the interest of her surviving children "will spring up, as it were," on the happening of this event.

The authorities cited by the counsel on the other side from "Lewis on the law of Perpetuity" on pages (top page) 109, 110, have reference solely to real estate, and have no application whatever to personal property.

2. An interest of a future nature may be created in personal property either by will or deed.   This future interest cannot be called strictly a remainder either vested or contingent.   Still, it is permitted, and it matters not by what name it may be called. The authority cited by the opposite counsel from Lewis on Perpetuity, on page 101, does not sustain the doctrine that there must be a trustee *eo nomine* to sustain by deed the future interest in personal property.   If it were necessary to protect the future interest, the tenant for life would be held as a trustee for that purpose, as has been repeatedly held in reference to settlements between husband and wife.—See Story Eq. 2 vol. p. 816 § 1380.   In the case of Price v. Price, 5 Ala. 578, it was held that the remainder was good, although there was no trustee. That case is very much like this.—See also Powell v. Brown, 1 Bailey 100, in point.   It is intimated in that case, however, that the death of the husband before the wife would have defeated the rights of the children of the wife.   We think it is apparent, however, that the learned judge who delivered the opinion in that case did not advert to the distinction between personal and real estate : a distinction which is as well settled as the rule itself.—See the reason given in William on Personal Property, on page (top page) 127–8.   Why, the rule applicable to real estate cannot apply even in England to personal propty, much less should such rule be applied in this country, where the whole doctrine of feuds has no application whatever.

3. But we submit to the court, that the word "life-times"

used in the deed means "joint lives," i. e. the husband would take only an interest so long as he and his wife both jointly live. Then whenever he died his interest would cease, and the wife would continue to be the owner of the property until her death, unless by virtue of his marital rights independent of the deed he acquired all the interest which his wife had in the property. Now it is always said that no technical words are necessary to exclude the husband's marital rights. Any thing which indicates an intention to do so will be so construed. It must be obvious that this deed was drawn by an unskilled hand. Now the deed gives him a particular interest, which is clearly defined and limited to their "life-times," i. e. their "joint lives." Does not this necessarily exclude any other interest than that given by the deed ? *Expressio unius est exclusio alterius*. Why shall not this maxim of the law apply as well to deeds of settlement between husband and wife as between other persons?

If we are right in this position, the property cannot be distributed amongst the heirs of Jonathan Mason at all.

CHILTON, C. J.—Lucy Mason, late Lucy Baldwin, while the widow of Aaron Baldwin, and entitled as such to an undivided interest in her deceased husband's estate, consisting of negro slaves, moneys and choses in action, being about to marry Jonathan Mason, entered into an ante-nuptial contract with him, which is as follows :

" Whereas a marriage is shortly intended to be solemnized, by the permission of God, between Jonathan Mason and Lucy Baldwin, and whereas said Lucy is heir to a considerable personal estate, claimed by her as widow and heir of the late Aaron Baldwin, deceased, consisting of negroes, bonds and moneys, as yet undivided ; and whereas it is agreed that said Jonathan Mason, after said intended marriage is had, receive and enjoy, during the life-times of the said Jonathan and Lucy, all ⸢the rights and profits of the said Lucy Baldwin, and at their decease to descend to the heirs of the body of the said Lucy Baldwin, which may survive at that time ; and it is further agreed, that the said Lucy Baldwin have no part or portion of the property now owned by the said Jonathan Mason after his death. In testimony whereof," &c. Signed by the respective parties, and dated 22d November, 1828.

The parties intermarried shortly after this agreement was entered into, the husband reduced the property of the wife, consisting of six negro slaves and $1456 07, into his possession, and about a year thereafter said to a witness that all the property he had in possession belonged to his wife, except a horse. It appears that he retained the slaves up to the period of his death, which happened in August, 1849, they having in the mean time increased to twenty-three in number.

Mrs. Mason, at the time of her second marriage, had some eight children living by her former husband, but bore none to her second. She administered upon the estate of Jonathan Mason, and on the petition of his only child (Mrs. Williamson) and her husband, is ruled to a settlement of her administration before the Probate Court. In that settlement, the question arose, whether the twenty-three slaves and the $1456, the property and its increase mentioned in the agreement, belonged to Mrs. Mason, or passed to her as assets of the estate of her husband, the said Jonathan. The Probate Court ruled that they were not assets, and she was held not liable to account for them. This constitutes the main subject matter for revision.

1. There is no principle of the common law better established than that marriage is a gift of all the wife's personal chattels in possession to the husband, and of such as he reduces into possession as husband during the coverture. The share of the estate of Aaron Baldwin to which Lucy, his widow, was entitled, was reduced into possession by Mason, her second husband, and his marital rights attached, and the property became absolutely his, unless he is excluded by the terms of the deed entered into between them prior to their marriage.

2. In construing this deed, with reference to the husband's exclusion, it is proper to premise, that the law favors the marital rights of the husband, and unless from the words of the instrument the purpose to exclude him clearly appear beyond any reasonable doubt, he still retains his ordinary legal and marital rights over the property—2 Story's Eq. Jurisp. § 1381.

3. The deed before us contains no words of exclusion as to the marital rights of the husband. It confers on him all the "rights and profits" of Lucy to the property during the "life-times" of the parties, that is, for the life of each and the survivor.— In other words, the husband's interest was not to terminate until

the death of both husband and wife; for "at their death" the property is to descend to the heirs of the body of the wife then living.

The instrument reserves no interest in the property whatever to the wife, and it follows, that, after it was reduced into possession by the husband, he took whatever interest the wife had by virtue of the marriage, conceding, for, the sake of the argument, that he · failed to take her entire interest under the deed.

The husband then was the owner of the absolute property in the chattels, but subject to the contingent limitation to the heirs of the body of the wife who might survive at the time of their death. As the heirs of the body of the wife may not be, and in fact in this case cannot be, the heirs of the husband, since they had no issue, it follows that the rule in Shelley's case has no application by way of enlarging the first estate, since that rule only applies to enlarge the estate of the ancestor whose heirs generally, or the heirs of whose body, are the objects of the limitation, and who can take by descent from him, and do not therefore take as purchasers under the deed.

4. It follows, therefore, that the interest of the husband continues for the life of the wife, and is assets in the hands of his executor, and there is a contingent interest, or *quasi* contingent remainder over. The question comes up, whether such interest can be created by deed, without the intervention of a trustee. This point appears to have been settled in the case of Price v. Price, 5 Ala. R. 578 ; and although the doctrine as there asserted is opposed to the English, as well as to many of the American authorities, yet, as it establishes a rule of property under which many titles may have accrued, we feel bound to adhere to it, without, however, conceding that a sale of the property by the first taker would defeat the remainder over, as asserted *arguendo* in that decision.

5. The money for which the land was sold must be regarded as the substitute for the land, and when the object for which the sale was made, namely, the payment of the debts of the estate, was accomplished, the remainder of the proceeds were properly decreed to go, as the land would have gone, to the heirs.— Whether the heirs would be entitled to be refunded out of the personal assets the entire amount of the proceeds of the sale,

and if so, whether the Probate Court is competent to do this, are questions not now before us.

6. The proceeds of the sale which remained after the payment of the debts not being personal assets of the estate, the court very properly refused to allow Mrs. Mason any share in the same. It does not appear that any question was raised as to her right of dower; but if her claim to share in the surplus proceeds of the sale of the land was predicated upon that ground, we are satisfied it was properly rejected, since it does not appear that her dower interest in the land was disposed of, even conceding that the Probate Court could have assigned dower out of the proceeds—a jurisdiction which we should be strongly inclined to deny ; but we leave it an open question, since its decision is not involved in the case before us.

We have now disposed of the assignment of errors on the part of Williamson and wife, and it results from what we have said that the decree as to them is erroneous, and must be reversed.

7. It remains only to consider one assignment by the counsel for Mrs. Mason, namely : the rejection of the item of one hundred dollars paid Messrs Stone & Judge, attorneys, for defending her against the previous application of Williamson and wife.— The record furnishes no ground for the rejection of this item. It appears to have been an item of expense incurred in good faith and necessarily, in the management of the business of the estate,—Gerald & Wife v. Bunkley, 17 Ala. R. 170. This is an error for which the decree must be reversed in favor of Mrs. Mason.

Decree accordingly reversed and remanded. Let each party recover their cost.