## MASON vs. PATE'S EXECUTOR.

[FINAL SETTLEMENT AND DISTRIBUTION OF DECEDENT'S ESTATE.]

1. *Construction of words " bodily heirs" in bequest, as affected by rule in Shelley's case and statutory provisions in this State.*—A bequest in these words, "I request and desire all of my property, both real and personal, to be equally divided between my daughter, Louisa A. Mason, and Franklin S. Pate, who are my true and lawful heirs;" and "I will and desire the property which my daughter obtains from this my will, *at her death to descend to her bodily heirs,*" —would, under the law existing in this State prior to the adoption of the Code, vest the absolute title to the property in the first taker; but, under the provisions of the Code, (§§ 1302, 1304, 1299,) vests only a life estate in the first taker.

2. *Respective rights of tenant for life and remainder-man; questions of jurisdiction and practice.*—Where money is bequeathed to one person for life, with remainder to another, the probate court has no power to direct its payment to the tenant for life, on his execution of a refunding bond; but should leave him to seek redress in chancery, where the proper practice is to allow him to take the money, on the execution of a suitable bond, and, in the event of his failure to do so, to lend it out on interest, and pay the interest to him annually.

APPEAL from the Probate Court of Sumter.

IN the matter of the final settlement and distribution of the estate of Samuel R. Pate, deceased, by John McInnis, the executor. The will of said decedent, which was dated the 9th November, 1854, after giving directions

for the payment of funeral expenses and debts, contained the following provisions: "After these debts are all paid, I then request and desire all of my property, both real and personal, to be equally divided between my daughter, Louisa A. Mason, and Franklin S. Pate, who are my true and lawful heirs. I will and bequeath unto my wife, Rachel Jane Pate, who has left my bed and board, the sum of one dollar; also, whatever clothing or furniture she brought to my house. I will and desire the property which my daughter obtains from this my will, at her death to descend to her bodily heirs. I will and request that my son, F. S. Pate, be allowed to take my negro boy Milan at valuation. I will and request my friend and brother, John McInnis, to be and act as executor of this my last will and testament. In witness whereof," &c. All the personal property belonging to the estate, except the slaves, was sold by the executor, under an order of court, for the payment of debts. The real estate was also sold, under an order of court, on the ground that its sale would be more to the interest of the heirs and legatees than a sale of the slaves; and the sum of $2128 41, mentioned in the decree of the court as hereinafter stated, was a part of the proceeds of said sale. The slaves were divided, under an order of the court; and on this division there was a difference of $1488 23, as shown by the decree, in favor of Mrs. Mason, who had two children living at the time of the settlement. On this state of facts, Mrs. Mason moved the court to render a decree in her favor, against the executor, for the two sums of money above mentioned. The court refused to do this, and rendered a decree in these words: "Ordered and decreed, that Louisa A. Mason be allowed the sum of $1488 23, and interest to the sum of $138 89, to equalize the division of the negro property, and recover the sum of $2128 41, making the sum of $3,755 33; which the executor, in accordance with the provisions of the will of said deceased, is authorized and directed to retain, for the use and benefit of the minor heirs of Louisa A. Mason, unless said Louisa A. Mason shall give bond for the delivery of said sum to her children at her demise." Mrs. Mason reserved

an exception to the refusal of the court to render a decree as asked by her; and she now assigns as error the decree rendered by the court, and the refusal of the decree asked by her.

S. F. HALE, for the appellant.—1. The language of the third clause of the will in this case, independent of statutory provisions, would create an estate tail; it is the appropriate language for that purpose.—Machem v. Machem, 15 Ala. 375; Ewing v. Standifer, 18 Ala. 400. Section 1300 of the Code then converts this estate tail into an estate in fee simple. Neither section 1302 nor section 1304 applies to the case; there being here no remainder limited to take effect on any such contingency as is contemplated by the former, nor any remainder created or limited over, nor any life estate given, within the purview of the latter section: on the contrary, a simple estate tail is created, which is converted by the statute (§ 1300) into an estate in fee simple. One who seeks to avoid the operation of section 1300 of the Code, must bring himself directly within the saving clause of some other provision.—Martin v. McRee and Wife, 30 Ala. 116. The Massachusetts and Kentucky cases, cited for the appellee, are not applicable here; because the rule in Shelley's case does not obtain in Kentucky, and the Massachusetts statute of 1791 is different from ours. Our statute not only abolishes the rule in Shelley's case, but establishes another rule fatal to those claiming in this case as remainder-men.

2. Although Mrs. Mason may have taken only an estate for life under the will of her father, she was nevertheless entitled to the possession of the property, real or personal, which formed the subject of the bequest; and the court could not deprive her of this right, by converting the property into money.—2 Story's Equity, p. 120, note 1; ib. § 1213 a. In such case, a different rule applies from that which would obtain if the bequest had been of money. The probate court, being a court of law, and therefore incompetent to enforce the equities between the parties, should have rendered an unconditional decree for the appellant,

and left the remainder-men to apply to a court of equity to secure their rights.

TURNER REAVIS, *contra.*—1. The limitation to the "bodily heirs" of Mrs. Mason is good, without reference to statutory provisions. The will does not create an estate tail, nor is the bequest within the rule in Shelley's case. Mrs. Mason takes only a life estate by implication, with remainder to the heirs of her body living at her death. The time when the limitation over is to take effect, is expressly limited to the death of Mrs. Mason; as much so as if the bequest had been to her for life, and at her death, if she should have an heir of her body, then to such heir, —in which case, the remainder would have been good. Bell v. Hogan, 1 Stew. 536; McVay v. Ijams, 27 Ala. 238; Bowers v. Porter, 4 Pick. 205; Williamson v. Williamson, 18 B. Mon. 329.

2. The bequest is certainly good under sections 1302 and 1304 of the Code, whatever may be its effect independently of those sections. Sections 1300, 1302 and 1304 of the Code, being *in pari materia*, must be construed as parts of one act, and made harmonious and consistent with each other. There can be no difference between a life estate created by implication, and one created by express words. The words of the bequest, therefore, construed by the rules applicable in such cases, create a life estate only in Mrs. Mason, with remainder to the heirs of her body, within both the letter and spirit of section 1304. If the limitation is not good under that section, there is this incongruity in the statutes: a limitation, to take effect on the death of a person without heirs of the body, is good under section 1302, but a limitation to the heirs of the body themselves is not. The only just construction of section 1302 is this: a limitation to the heirs of the body of the first taker is good, because the section limits the estate to the heirs of the body living at the death of the first taker; and a limitation over in default of such heirs is also good. Otherwise, the section would present the anomaly of a good limitation over resting for support upon a bad limitation, and would not allow the second

objects of the testator's bounty to take, while those further removed from his consideration and affections would. The only construction which gives effect to each of these three sections, and makes them harmonious and consistent, is this : as a general rule, estates tail are abolished, (§ 1300 ;) nevertheless, a limitation to the heirs of the body of the person named as ancestor, means heirs living at his death, (§ 1302,) and is not an estate tail, nor within the rule in Shelley's case; consequently, not only may such heirs of the body take, but a limitation over in default of them is good; and, under section 1304, they all take as purchasers. Moreover, section 1300 cannot properly be said to apply to bequests of personal property, which was not the subject of an estate tail at common law, nor by the statute *de donis.* Limitations of personal property to the heirs of the body were held void, not because they created an estate tail, but because they were so remote as to tend to create a perpetuity, and because they were obnoxious to the rule in Shelley's case.

3. The appellant takes only a life estate in one-half the estate after payment of debts. This residue having been necessarily converted into money, it must be regarded as a legacy of money to one for life, with remainder to another ; in which case, the tenant for life is not entitled to the money itself, but only to the interest during his life. 8 Ired. Eq. 99 ; 7 *ib.* 178 ; Busbee's Eq. 5 ; 2 Dev. Eq. 420 ; 1 Bailey's Eq. 411 ; 9 Ala. 955 ; 10 B. Mon. 290 ; 2 Paige, 123 ; Keyes on Chattels, §§ 511, 513 ; Hill on Trustees, 550. Not being entitled to the money, the appellant could not recover it in any court, either of law or equity. Section 1772 of the Code, while giving an additional remedy for the recovery of legacies, does not give any additional right to them. As to this money, the will makes the executor a trustee for the appellant and her children ; and on final settlement of his accounts, the court could do no more than ascertain by its decree the amount of the trust fund in his hands. The order made by the court was manifestly necessary to protect the rights of the infant remainder-men, and was authorized by section 1822 of the Code. At any rate, if the order exceeds the authority

conferred by the statute, the error is in favor of the appellant, and, therefore, constitutes no ground of reversal in her favor.

STONE, J.—Although the rule in Shelley's case embraces only titles to real property, yet most of its principles and incidents are, in this country, alike applicable to wills and other conveyances of personal property.—Fearne on Remainders, vol. 2, p. 394, § 714; *ib.* ch. 17, § 1, p. 270; Ewing v. Standifer, 18 Ala. 400; Machem v. Machem, 15 Ala. 373; Darden v. Burns, 6 Ala. 362; Couch v. Anderson, 26 Ala. 676; Powell v. Glenn, 21 Ala. 458; Moffatt v. Strong, 10 Johns. 12. When applied to personal property, the remainder over to heirs, or heirs of the body of the first taker, is declared inoperative, because of its remoteness, or tendency to lead to perpetuity.—Keyes on Ch. §§ 178, 179, 181, 250. In speaking of these rules hereafter in this opinion, we shall style them indifferently the rule in Shelley's case.

Under the influence of this rule, before the adoption of our Code, a conveyance to A. for life, or to A. generally, and at the death of A. to his heirs, vested in A., the first taker, a fee simple in lands, and an absolute title in personal property.—Tucker's Com. 135; Ewing v. Standifer, 18 Ala. 400; McGraw v. Davenport, 6 Por. 327; Couch v. Anderson, *supra;* Isbell v. Maclin, 24 Ala. 315; Horne v. Lyeth, 4 Har. & Johns. 431; Keyes on Ch. § 181; Moore v. Brooks, 12 Gratt. 135; Keyes on Realty, § 71; Scott v. Abercrombie, 14 Ala. 270.

So, a conveyance to A. for life, or to A. generally, and at his death to the heirs of his body, at common law vested in A. an estate in fee tail in lands, and an absolute title in personalty.—Machem v. Machem, 15 Ala. 373; Darden v. Burns, 6 Ala. 362; 1 Fearne on Rem. 463; 4 Kent's Com. (8th ed.) 237; Keyes on Ch. §§ 246, 179, 250; Ld. Chatham v. Tothill, 6 Bro. P. C. 450; Powell v. Glenn, 21 Ala. 458.

The effect of the rule was, in the case of an estate *expressed to be for life,* to enlarge such estate, by force of the words *remainder to heirs or heirs of the body,* into a

fee simple, or fee tail, in the first taker; while, in the case of an estate *not expressed* to be for life, the super-added words, *remainder to his heirs or the heirs of his body,* did not cut down the estate to one for life in the first taker, but only determined the character of the fee, by prescribing the class of heirs to which the inheritance should descend. All such conveyances, then, had the same legal effect, as if the words, *remainder, at his death,* &c., had been omitted; and the conveyance had read, to A. and his heirs, or to A. and the heirs of his body. The reasons on which the rule rested have been too often expressed to need repetition here.—Fearne on Rem. p. 28, *et seq.*

An examination of the authorities will show, that no particular or technical import was attached to the words *remainder, after his or her death,* &c.; or to the language by which the estate in the first taker was created. The rule was applied to all cases, where an estate for life was given to the first taker, and an attempt made, after its termination, without other more specific words, to vest an estate by purchase in the *heirs,* or *heirs of the body* of the first taker.—Tucker's Com. 135; Ewing v. Standifer, 18 Ala. 400; Machem v. Machem, 15 Ala. 373; Darden v. Burns, 6 Ala. 362; 4 Kent's Com. 237; Hooe v. Hooe, 13 Gratt. 245.

In several of the States composing this confederacy, estates tail have been by statute converted into estates in fee simple. In our own State, this was done as early as 1812.—Clay's Dig. 157, § 37; Code, § 1300. It will be observed, that our first statute embraced lands and slaves, and the Code uses the words, *real and personal property.* Under the influence of this statute, the phrase, *heirs of the body,* or *bodily heirs,* in all instruments to which the statute applies, has the same import as the word *heirs* at common law.

If the will of Samuel R. Pate had taken effect prior to January 17th, 1853, Louisa A. Mason would, under the rules stated above, have taken an absolute title in the property therein bequeathed to her. The will, however, did not take effect until after our Code become operative.

The question arises, must that will now receive a differ
ent construction?

While the courts of this and the mother country have
steadily adhered to the construction, that the terms, *heirs*,
*issue*, and *heirs of the body*, unexplained by others in
the instrument, are words of limitation, and not of pur-
chase—express only the quantum of interest in the first
taker, and create no interest in remainder—they have
done so in obedience to an imperative public policy, and
a long recognized rule of property. The individual hard-
ship and oppression of the rule, the almost certainty that
in many cases the intention of the grantor or testator was
thereby defeated, have been often felt. Hence, whenever
from the context courts have been able to discern that
the word *heirs* meant children of the first taker, or a class
of ₁persons who should stand in the relation of heirs to
the first taker at the time of his death, the remainder over
has been upheld.—4 Kent's Com. (8 ed.) 229.

One ground on which the rule in Shelley's case is sup-
posed to rest, may, with propriety, be here mentioned.
We allude to the feudal doctrine of *reliefs*, or composition
exacted in feudal times by the lord paramount from the
heir, as the price or purchase of his right to take posses-
sion of the fee on the death of his ancestor. This source
of profit to the feudal lord depended on the nature of the
heir's title; whether he took by descent or by purchase.
The former conferred the right to demand reliefs, while
the latter did not. A desire to foster the landed aristoc-
racy, it is thought, entered into the policy of inclining to
regard titles as acquired by descent rather than by pur-
chase.—2 Bla. Com. 65.

The fact that the rule in Shelley's case frequently sac-
rifices the intention of grantors and testators to a rule of
construction, and the further fact that the policy of our
country is entirely dissimilar to the feudal policy which
prevailed in England when that rule was adopted, have
doubtless contributed to the change of the rule, which has
been effected by legislation in many of the States com-
posing this Union. Massachusetts, New York and Ala-
bama, have severally given a legislative definition of the

terms, *heirs, issue,* and *heirs of the body,* when found in a certain connection. Our own legislation on the subject is contained in sections 1302 and 1304 of the Code, which read as follows:

"§ 1302. When a remainder in real or personal property is limited to take effect on the death of any person, without heirs, or heirs of his body, or without issue, the word "heirs" or "issue" must be construed to mean heirs or issue living at the death of the person named as ancestor."

"§ 1304. When a remainder, created by deed or will, is limited to the heirs, issue, or heirs of the body, of a person to whom a life estate in the same property is given, the persons who, on the termination of the life estate, are the heirs, issue, or heirs of the body of such tenant for life, are entitled to take as purchasers, by virtue of the remainder so limited to them."

The section which is supposed to bear peculiarly upon the question under discussion, is the one last copied, § 1304. It will be observed, that it makes provision only when a remainder "is limited to the heirs, issue, or heirs of the body, of a person to whom a *life estate* in the same property is given." It is here contended that this section can exert no influence upon the construction of Mr. Pate's will, because that will does not give the appellant a life estate, but an absolute title. With all proper deference, we think the argument proves too much, and hence proves nothing.

Why is it that the will of Samuel R. Pate would not, at common law, create a life estate in Mrs. Mason? The answer must be, because of the rule in Shelley's case. If the will had given the property to her *expressly for life,* and had added the words, *at her death to descend to her bodily heirs,* this, under the same rule, would have given Mrs. Mason, not an estate for life, but an absolute title. Thus construing the language of the statute, and giving proper consideration to the rule in Shelley's case, we would be forced to hold that section 1304 of the Code has accomplished little or nothing; because few conveyances express the estate of the first taker to be for life.

A more rational interpretation of the words, we apprehend, would be to regard the section in controversy as giving and intending to give a legislative definition of the words, *heirs, issue,* and *heirs of the body,* viz., that they point to, designate and describe the persons who sustain that relation to the first taker at the time the life estate falls in. In construing a deed or will, then, which gives an estate for life, either generally or expressly, and contains the superadded words, *with remainder,* or *at his* or *her death, to his* or *her heirs, issue,* or *heirs of the body,* we should regard the instrument as containing the additional words, *living,* or *in being at his* or *her death.* In other words, we should read the instrument as if it were written, *to A, with remainder,* (or, *at his death,*) *to his heirs living at the time of his death.* In this we but substitute the legislative definition for the words found in the deed or will. Thus read, all will admit that the will gives to Mrs. Mason only a life estate; and the statute converts her bodily heirs into purchasers.

Again: The different sections bearing on this question, and which are found on page 283 of the Code, should be construed in *pari materia.* Section 1302 provides for a limitation "to take effect on the death of a person without heirs," &c. Under this section it is manifest, that a conveyance to A., and at his death to his heirs, and if A. should die without heirs, then to B., would, on the happening of the contingency, vest a good title in B. Now, under the construction contended for, would not this be a very strange result? Heirs, in the instrument, would mean "heirs living at the death of the first taker," for the purpose of supporting the remainder over; but would have no such definite meaning, when invoked in support of their own claim as purchasers. A construction which leads to such absurd results, cannot be sound.

The Massachusetts statute of 1791, ch. 60, so far as it affects this case, is not materially different from section 1304 of our Code. It provides, "that whenever any person shall hereafter, in and by his last will and testament, devise any lands, &c., to any person, for and during the term of such person's natural life, and after his death

to his children, or heirs, or right heirs in fee, such devise shall be taken and construed to vest an estate for life only in such devisee, and a remainder in fee simple in such children, heirs, or right heirs; any law, usage or custom to the contrary notwithstanding."

In Bowers v. Porter, 4 Pick. 198, the language of the will was, "I give to my daughter, Lydia Bowers, the improvement of my homestead farm," &c., "the said premises to be equally divided between all her legal heirs at her decease." There were no words expressing that the gift to Lydia Bowers was for life, other than those above copied. It was held, under the act of 1791, that Lydia Bowers took only a life estate, with remainder in fee to he children living at her death. Chief-Justice Parker, in delivering the opinion of the court, said: "Without doubt, it was the intention of the legislature, by this statute, to abolish the rule in Shelley's case, which had got to be received as the rule of the common law. It is unfortunate that this intention was not more clearly expressed; for it certainly is not wholly without doubt, whether, in order to come within the operation of this statute, the estate for life should not be created by express terms in the will, and also whether the remainder to the heirs should not be expressly, and not by implication only a fee simple. We are inclined to think, however, that when by construction of law a life estate is created, and in the same way a remainder to the heirs or children in fee, this statute will operate to prevent the application of the rule in Shelley's case."

We have said that several of the States have by statute repealed or materially modified the rule in Shelley's case. See 4 Kent's Com. (8th ed.) pp. 239 to 243. The statute of New York (R. S. vol. 1, p. 725) seems to be confined to real estate, but is, in other respects, substantially the same as our own. Chancellor Kent evidently regarded their statute as an abolition of the rule.—Vol. 4, p. 243, and note.

No peculiar importance can attach to the word "descend," as found in the will of Mr. Pate. It does not necessarily denote inheritance. In a similar connection

it has been construed by this court to mean *to go to ;* and we think that is its proper sense in this will.—McVay v. Ijams, 27 Ala. 238; Williamson v. Mason, 23 Ala. 488; Greenwood v. Coleman, January term, 1859.

We hold, then, that section 1304 of the Code applies to all cases, where an estate is given to A. expressly for life, with remainder, or at the death of A., the first taker, to the heirs, issue, or heirs of the body of such grantee or devisee. It also embraces all cases, where an estate is given generally to A., followed by the words, *with remainder*, or *at the death of A.*, (or other equivalent expression,) to the heirs, issue, or heirs of the body of A. In each of these cases, before our statute, a fee or absolute title would vest in A., the first taker; while in each it is morally certain that a life estate only was intended, but which life estate was enlarged into a fee, or absolute title, by force of the rule in Shelley's case.—Bowers v. Porter, *supra ;* Smith v. Bell, 6 Peters, 68; Keyes on Ch. § 262.

In the application of section 1304 to cases which may arise, it may become material to inquire, whether its provisions embrace conveyances *to A. and his heirs, to A. and his issue,* or *to A. and the heirs of his body.* Under the English jurisprudence, a deed of lands to A., without more, conveyed but a life estate. Hence, the word *heirs* was necessary to enlarge the title into a fee. At an early day, the legislature of this state enacted, that "every estate in land, which shall be hereafter granted, conveyed or devised, although words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple, if a less estate be not limited by express words." Act of 1812, Clay's Dig. 156, § 33.

The language of the Code is slightly different.—See § 1299. Its exceptional clause is, "unless it clearly appears that a less estate was intended." Now, in the language above supposed, it would not clearly appear that a less estate was intended; and hence, if the subject-matter of the conveyance was lands, A. would take a fee simple.

But this does not meet all the difficulties. Section 1304 applies to personal as well as real property; and the

words *heirs, issue,* and *heirs of the body,* are not only not necessary to the vesting of an absolute title in personal property, but are inappropriate to express such intention. Keyes on Ch. §§ 248, 249.

We hold that section 1304 has no application to the case supposed, for the following reasons:

The rule against perpetuities in the enjoyment of personal estate, rested its construction of the words, *heirs, issue,* &c., on the indefiniteness of those terms; extending as they do to the remotest generation of persons filling that relation. Hence, the courts, in construing them, could not take the first step, without letting in all the mischiefs against which the rule was intended to provide. When, however, there was anything in the context which showed that by the word *heirs* was meant children, or persons standing in the relation of heirs to the first taker at the termination of the particular estate, such persons have ever been let in as purchasers.—See Kay v. Connor, 8 Humph. 633; Keyes on Ch. § 246; Dunn v. Davis, 12 Ala. 135; Stone v. Maule, 2 Sim. 490; Bell v. Hogan, 1 Stew. 536; Powell v. Glenn, 21 Ala. 458; Williamson v. Mason, 23 Ala. 488; McWilliams v. Ramsay, 23 Ala. 813; McVay v. Ijams, 27 Ala. 238; Elmore v. Mustin, 28 Ala. 309; Fellows v. Tann, 9 Ala. 999.

In these cases, it will be observed, that the *heirs,* or *issue,* are let in, because the instrument affirmatively shows that those words were employed to designate children, &c. This being the case, it necessarily follows that, if the word *children* had been employed in the cases to which the rule has been held not to apply, such children, and in some cases grand-children, would have taken as purchasers under the conveyance.—See Keyes on Ch. § 97.

Now, in the case supposed of a conveyance by will or deed to A. and his heirs, issue, &c., let us substitute for the word *heirs,* the word *children;* the conveyance will then read, 'to A. and his children.' Under such conveyance, A. will not take a life estate, remainder to his children. If A. have children at the time the conveyance takes effect, such children take jointly with their parent,

and after-born children are excluded. On the other hand, if A. have no children at the time his rights under the conveyance accrue, A. takes an absolute title.—Vanzant v. Morris, 25 Ala. 285; Wilde's case, 6 Coke's Rep. 17 a; Fellows v. Tann, 9 Ala. 999; Spear v. Walkly, 10 Ala. Rep. 328.

The case we have supposed, then, is not that of an estate in *remainder, limited to the heirs, issue,* &c., *of a person to whom a life estate in the same property is given.* There is neither a life estate given, nor a remainder limited; but on the contrary, if the heirs, issue, &c., take at all under such conveyance, they take jointly with the ancestor.

The construction above announced leaves an ample field for the operation of section 1300 of the Code, which reads as follows: "Every estate, in real or personal property, in fee tail, now or hereafter created, becomes an estate in fee simple," &c. It controls conveyances *to A. and the heirs of his body,* and converts the estate created thereby into a fee simple in A., instead of a fee tail, as it existed at common law. There may be many other cases within its control.

It results from what we have said, that the probate court of Sumter did not err in holding that Mrs. Mason takes only a life estate under the will of her father.

[2.] The probate court had no authority to render a decree, requiring Mrs. Mason to enter into bond, before she could receive her share of the estate. This will require the exercise of chancery powers;—and in cases like the present, where the subject of the legacy is money, and the legatee takes only a life estate, the probate court should not order the money to be paid over, but leave such legatee to seek redress in the court of chancery. We deem it proper here to remark, that the proper practice in the chancery court would be, to give to Mrs. Mason the option of taking the money, upon the execution by her of a suitable bond; and in case of her failure to do so, then to order the money to be let out on loan, with at least two good and solvent sureties, and the interest collected annually, and paid over to her.—Keyes on Chat.

§§ 511, 513; Kinnard v. Kinnard, 5 Watts, 108; Eichelberger v. Barnetz, 17 S. & R. 293; 2 Kent, 354–5; Covenhouse v. Shuler, 2 Paige, 122; Clark v. Clark, 8 Paige, 152; Miller v. Williamson, 5 Md. 219, 233; 2 Story's Eq. Jur. § 845 *a*; 2 Lomax on Ex'rs, 71, 139; Young v. Miles, 2 B. Monroe, 287; Smith v. Badeen, 2 Dev. Eq. 420; Jane v. Simmons, 7 Ired. Eq. 176; Graham v. Roberts, 8 Ired. Eq. 101; Taylor v. Bond, Busbee's Eq. 25; Freeman v. Cook, 6 Ired. Eq. 378.

The judgment of the probate court is reversed, and the cause remanded.